UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARVIN WADDLETON, III, | § | |
| | § | |
|      Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-267 |
| | § | |
| NORRIS JACKSON, *et al*, | § | |
| | § | |
|      Defendants. | § | |

**ORDER ADOPTING**
**MEMORANDUM AND RECOMMENDATION**
**REGARDING MOTIONS_FOR SUMMARY JUDGMENT**

Pending before the Court are (1) Defendants' Motion for Summary Judgment (D.E. 84), and Plaintiff's Motion for Judgment as a Matter of Law, treated as a cross-motion for summary judgment (D.E. 100). On October 3, 2012, United States Magistrate Judge Brian L. Owsley issued a Memorandum and Recommendation (D.E. 101), recommending that Defendants' Motion for Summary Judgment be granted and that Plaintiff's motion be denied. Plaintiff filed his Objections (D.E. 103) on October 18, 2012.

At issue is whether Plaintiff has stated a cognizable claim under the Fourth Amendment of the United States Constitution for what he claims are unreasonable searches in the form of strip and visual body cavity searches of prison inmates. He claims that the searches are unreasonable because they do not have a penological justification and because the place and manner of the searches—searches of men within view of women officers—are arbitrary, harassing, and humiliating. The Defendants assert that the searches are abundantly reasonable and, thus, Plaintiff has failed to state a

claim upon which relief can be granted because sovereign immunity protects them in their official capacities and qualified immunity protects them in their individual capacities.

The Fifth Circuit has directed that this Court determine whether the prison officials have satisfied their "light" burden of showing that the searches are reasonable when balancing the need for the searches against the invasion of personal rights that they entail. *Waddleton v. Jackson*, No. 11-40055 (5th Cir. October 21, 2011) (citing *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir. 1994)). Included in the analysis is the scope of the intrusions, the manner in which they were conducted, the justification for them, and the places in which they were conducted. *Id*. (citing *Watt v. City of Richardson Police Dep't*, 849 F.2d 195, 196-97 (5th Cir. 1988)).

The Magistrate Judge has issued his Memorandum and Recommendation concluding that the Defendants have indeed met their burden. Plaintiff objects, debating the truth of the Defendants' penological justifications and suggesting that there are better, more effective ways of running a prison so as to minimize threats to security. Plaintiff contends that his position has been misconstrued and that his arguments are supported by case law.

### A.  Plaintiff Admitted to Sufficient Cause for Search.

First, Plaintiff accuses the Magistrate Judge of "perjury" in construing Plaintiff's allegations as admitting to there having been a "fight" prior to the chow hall strip search. Plaintiff argues that he never said there was a "fight" and that his whole complaint is that the strip searches are unjustified, in part, because there was no fight. In reviewing the

record, it is readily apparent that, in his Step 2 Grievance, Plaintiff referred to the event that preceded the chow hall strip search as "the incident."  D.E. 1, p. 7.  In his objections to a previous memorandum and recommendation, he referred to it as an "altercation."  D.E. 27, p. 2.   Given Defendants' explanation that strip searches are justified by diversions as well as other more violent acts, Plaintiff has admitted that there was an event that triggered the chow hall strip search sufficient to support the Magistrate Judge's analysis.  Plaintiff's first objection is OVERRULED.

**B.  The Strip Searches are Reasonable.**

Second, Plaintiff reasons that strip searching inmates after they have already been searched upon entering the facility is unnecessary—that the prison administration's concern should be focused on the entry of jailors and others who come in from the outside world.  In other words, the threat to jail security comes more from correctional officers smuggling in contraband than from inmates moving about the facility and interacting.  In this regard, Plaintiff cites *Security & Law Enf. Emp. v. Carey*, 737 F.2d 187, 201-02 (2nd Cir. 1984).  That case illustrates that correctional officers can pose a threat to prison security and, under appropriate circumstances, may properly be subjected to searches.  It does not prescribe searches of correctional officers instead of inmates.

Plaintiff goes on to suggest that, because some persons are to be searched only upon reasonable suspicion that the particular person has done something wrong, the same should hold true for inmates.  D.E. 103, p. 4 (citing *Hunter v. Auger*, 672 F.2d 668, 675 (8th Cir. 1982)).  *Hunter* was concerned with civilians who came to visit inmates in prison and the opinion stands for the general proposition that an anonymous, unconfirmed, and

non-specific tip could not support a search of any particular visitor—that such a search should be on a person-specific suspicion.  This rationale does not hold true with respect to the types of security threats that exist within the inmate population of a prison, as illustrated by the evidence that the Defendants submitted.

Plaintiff next complains about Defendants' evidence, which he admits that he cannot controvert.  He cites *Ciomber v. Cooperative Plus, Inc*., 527 F.3d 635, 643 (7th Cir. 2008) for his argument that the Defendants have done something procedurally improper and that the Court should disregard Defendants' summary judgment evidence. The rule on which *Ciomber* and Plaintiff rely is a Local Rule of the Northern District of Illinois.  It has no application in the Southern District of Texas.  Nothing precludes this Court from considering as proper summary judgment evidence the "Offender Searches" policy and the Affidavit of Norris Jackson submitted by Defendants.  D.E. 84-1 and 84-2.

Plaintiff complains that the privacy of one's naked body is culturally important and constitutionally protected from unreasonable search, citing *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963) (male police officer violated constitutional privacy rights of female assault victim by photographing her in the nude and circulating the photos to others).  The Court does not challenge this general statement.  The question, though, is whether the searches imposed here were reasonable under the circumstances.

Plaintiff cites *Ruiz v. Estelle*, 666 F.2d 854, 871 (5th Cir. 1982) for the proposition that strip searches are only reasonable if there is cause to believe that the specific prisoner being searched is in possession of contraband.  In that case, the Court enjoined the use of strip searches as a condition to the use of the law library unless there was a particular

reasonable cause.   There is no evidence that the strip searches at issue here were implemented to deter any inmate from exercising constitutional rights, such as having access to the law library.   Nothing about that injunction order prohibits the use of strip searches for a more generalized inmate population when there is a threat to security as identified by Defendants in this case.

Plaintiff's reliance on *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861, 1884 (1979) is curious.   Perhaps Plaintiff relies on the appellate court's holding, which the Supreme Court reversed.   The Supreme Court held that, even though strip searches had revealed only one case of the discovery of contraband in that facility, use of those searches was justified because of the inherent dangers of the inmate population.   While the appellate court had relied on the fact that only one instance of contraband smuggling had been found in the facility's short history of strip searches for indicating that the need was not justified, the Supreme Court looked at that same fact as equally indicative that strip searches were effective as a deterrent—a reasonable basis for the use of such an invasion of privacy.   *Bell v. Wolfish* supports the Defendants' position in this case.

Plaintiff also cites *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247 (1960) for his argument that the institution should find a better way to achieve its objectives when the constitutional right to an expectation of privacy is jeopardized.   In *Shelton*, schoolteachers filed suit to complain of a 14th Amendment violation in the form of a state statute that required them to file an annual disclosure of all organizations to which they belonged or to which they contributed for the five years preceding the disclosure as a condition of employment.   While the Court did recite the need to use less onerous means

to achieve any legitimate objective, this Court has not been presented with any evidence that the prison administration's legitimate security goals can be achieved in a less onerous manner.

Plaintiff suggests that existing metal detectors and pat downs are sufficient to detect contraband and that strip searches to find notes taped to feet and other places is "unreasonable and unrealistic," citing *Turner v. Safley*, 482 U.S. 78, 90, 107 S.Ct. 2254, 2262 (1987). But the Supreme Court, in *Turner*, approved of restrictions on inmate correspondence despite a First Amendment challenge. In doing so, the Court emphasized the deferential test for reviewing prison administration policies so that courts, which are not equipped to do so, will not end up micromanaging the prisons. Notes taped to feet obviously present a security risk through inmate correspondence that the Supreme Court is willing to recognize. Efforts to intercept such communications cannot be summarily termed "unreasonable and unrealistic."

It is true that, in *Hurley v. Ward*, 549 F.Supp. 174 (D.C.N.Y. 1982), that court held that routine strip searches were not warranted except after contact visits. That opinion does not apply here for at least three reasons. First, that case involved routine strip searches that were administered frequently and, according to the evidence, needlessly. The strip searches at issue here were not automatic, as a matter of ordinary course, or nearly as frequent as those in *Hurley*, but instead were imposed for reasons articulated by the Defendants. Thus the case is distinguishable on its facts. Second, the opinion was issued from the court for the District of New York and is not binding precedent on this Court. Third, while this *Hurley* opinion was not directly appealed, the holding on which

Plaintiff relies has been expressly rejected by the Second Circuit Court of Appeals with jurisdiction over the District of New York.  *Covino v. Patrissi*, 967 F.2d 73, 79 n.5 (2nd Cir. 1992).

Plaintiff has failed to demonstrate that the Defendants' policy on strip searches or their application of that policy is unconstitutional as a matter of fact or as a matter of law. Plaintiff's second objection is OVERRULED.

### C.  Qualified Immunity Protects Defendants.

Plaintiff's third objection is that, based on the demonstrated, clearly established unconstitutionality of the strip searches, Defendants are not entitled to qualified immunity for conducting such searches.  Because, as demonstrated above, the premise of this argument—that the searches were unconstitutional—is erroneous, Plaintiff has not defeated the qualified immunity defense.  Plaintiff's third objection is OVERRULED.

### D.  Defendants Are Not Liable in Any Capacity.

Plaintiff suggests that municipal liability may be imposed under these circumstances.  The Court notes that Plaintiff has not sued any municipality.  Plaintiff does not appear to contest sovereign immunity for Defendants in their official capacities, but briefs the exception to that immunity for Defendants in their individual capacities. While sovereign immunity does not protect them in their individual capacity, qualified immunity does.  As noted above, Plaintiff has failed to defeat the qualified immunity defense.  Plaintiff's fourth objection is OVERRULED.

### E. Summary Judgment Procedure Does Not Prohibit Judgment in Favor of Defendants.

Last, Plaintiff objects, claiming that he has raised a disputed issue of material fact that prohibits the issuance of summary judgment in Defendants' favor.  When an official pleads qualified immunity as a defense, this alters the summary judgment burden of proof by shifting it to the plaintiff "who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citation omitted), *cert. denied*, 131 S.Ct. 2932 (2011).  Again, as demonstrated above, Plaintiff has not shown that Defendants violated clearly established law.  Plaintiff's fifth objection is OVERRULED.

Having reviewed the findings of fact, conclusions of law, and recommendations set forth in the Magistrate Judge's Memorandum and Recommendation, as well as Plaintiff's Objections, and all other relevant documents in the record, and having made a *de novo* disposition of the portions of the Magistrate Judge's Memorandum and Recommendation to which objections were specifically directed, the Court **OVERRULES** Plaintiff's Objections and **ADOPTS** as its own the findings and conclusions of the Magistrate Judge.  Accordingly, Defendants' Motion for Summary Judgment (D.E. 84) is **GRANTED.**  Plaintiff's Motion for Judgment as a Matter of Law, treated as a cross-motion for summary judgment (D.E. 100) is **DENIED**.

This action is **DISMISSED WITH PREJUDICE**.

ORDERED this 24th day of October, 2012.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE